IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN 1 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 06-253 M |
| ) | |
| RYAN H. RAINEY, ) | 18 U.S.C. §§ 208(a) & 216(a)(1) |
| ) | (Conflict of Interest) |
| Defendant. ) | |
| ) | |

## FACTUAL BASIS FOR PLEA

The United States of America, by and through its undersigned attorneys within the U.S. Department of Justice, Criminal Division, Public Integrity Section, and the defendant, RYAN H. RAINEY, personally and through his undersigned counsel, hereby stipulate to the following facts pursuant to U.S. Sentencing Guideline § 6A1.1 and Rule 32 (c)(1) of the Federal Rules of Criminal Procedure:

1. The U.S. Department of Justice ("Department of Justice" or "DOJ") was a department and agency in the executive branch of the United States Government.

2. From in or about January 2002, through on or about April 1, 2005, the defendant, RYAN H. RAINEY, was employed as an attorney by the Department of Justice, Civil Rights Division, Special Litigation Section ("Civil Rights Division"). Prior to joining the Civil Rights Division, defendant RAINEY served as a criminal AUSA, handling child abuse prosecutions, appeals, and special proceedings, in the United States Attorney's Office for the District of Columbia for a period of approximately seven years. During his tenure with the Civil Rights Division, defendant RAINEY's responsibilities included, among other things, investigating

alleged civil rights abuses of persons confined in certain institutions owned or operated by, or on behalf of, state and local governments.

3. "California Attorney General's Office Official A" was a Supervising Deputy Attorney General employed by the State of California's Department of Justice Office of the Attorney General.

4. The California Youth and Adult Correctional Agency ("YACA") was an agency and department of the government of the State of California. YACA's responsibilities included overseeing and administering the State of California's penal institutions through specialized departments, councils, commissions, and boards. Among these entities was the California Youth Authority ("Youth Authority"), which was charged with, among other responsibilities, operating the state's juvenile detention centers and youth correctional facilities.

5. The N.A. Chaderjian Youth Correctional Facility ("Chad Facility"), located in Stockton, California, was one of approximately nine (9) institutions and camps run by the Youth Authority. The Chad Facility housed a young adult offender population whose wards and inmates ranged in age from 18 to 25.

<u>Taxpayer Lawsuit Against the Youth Authority</u>

6. On or about January 16, 2003, a taxpayer lawsuit was filed in California state court against the Youth Authority, challenging the living conditions of all of the state's juvenile detention and correctional institutions, including the Chad Facility, as well as the state's treatment of those housed in the facilities (hereinafter the "taxpayer lawsuit"). "Plaintiff's Counsel A" served as the attorney for the named plaintiff in the taxpayer lawsuit.

7. On or about November 16, 2004, the parties to the taxpayer lawsuit executed and filed with the state court a comprehensive consent decree outlining the remedial actions to be voluntarily undertaken by the State of California to reform its juvenile detention and correction institutions, and detailing the parties' rights and responsibilities under the settlement agreement.

8. The taxpayer lawsuit settlement agreement memorialized, among other things, the parties' prior agreement that a Special Master be appointed by the court to monitor the reform of the juvenile facilities as well as the parties' compliance with the terms of the consent decree. The State of California, through the Youth Authority, was to be responsible for compensating the Special Master.

### The Department of Justice's Investigation of the Chad Facility

9. On or about April 3, 2003, while the above-referenced taxpayer lawsuit was pending in state court, the Department of Justice formally notified then-California Governor Gray Davis of the Federal Government's intent to investigate the Chad Facility pursuant to the Civil Rights of Institutional Persons Act ("CRIPA"), 42 U.S.C. § 1997, and the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), 42 U.S.C. § 14141.

10. When the Department of Justice's civil investigation of the Chad Facility was officially opened, defendant RYAN H. RAINEY was assigned to serve as the lead attorney.

11. In the course of the Department of Justice's investigation of the Chad Facility, the defendant, RYAN H. RAINEY, and other attorneys assigned to the case, retained expert consultants. On or about August 11-14, October 29-30, and December 9-12, 2003, defendant RAINEY, the other DOJ attorneys assigned to the investigation, and the retained experts

conducted on-site inspections of the Chad Facility. During each of these visits, residents as well as direct care, program, and administrative staff were interviewed.

12.     In or about January 2004, defendant RYAN H. RAINEY and his investigative team completed their on-site document review of the Chad Facility's policies and procedures, incident and investigation reports, and medical, mental health, and education reports. The disclosure of discoverable materials from the State of California and California Attorney General's Office Official A continued to be produced to defendant RAINEY through in or about March 2004.

13.     In the interim, in or about February 2004, defendant RYAN H. RAINEY and the other DOJ attorneys assigned to the Chad Facility investigation, began drafting the Department of Justice's findings letter, addressed to California Governor Arnold Schwartzenegger, detailing their findings, conclusions, and recommendations relating to the Department of Justice's investigation. Defendant RAINEY continued to work on the Department of Justice's findings letter through on or about June 7, 2004, when he was recused from handling the case as a direct result of the facts leading to this Information.

### Negotiation for Prospective Employment

14.     California Attorney General's Office Official A was handling the taxpayer suit against the Youth Authority on behalf of the State of California and simultaneously served as defendant RYAN H. RAINEY's point-of-contact with regard to the Department of Justice's investigation of the Chad Facility.

15. In or about February 2004, California Attorney General's Office Official A contacted defendant RYAN H. RAINEY by telephone to discuss possible nominees for the Special Master position created in the course of settlement negotiations in the taxpayer lawsuit.

16. In late-February 2004, California Attorney General's Office Official A again contacted defendant RYAN H. RAINEY by telephone. She told defendant RAINEY that she had discussed defendant RAINEY's possible candidacy for the Special Master position with her colleagues, supervisors, and officials from her client agencies (i.e., YACA and Youth Authority). California Attorney General's Office Official A then asked defendant RAINEY whether he was interested in the Special Master position.

17. Defendant RYAN H. RAINEY immediately informed California Attorney General's Office Official A that he was interested in the Special Master position.

18. On or about March 1, 2004, defendant RYAN H. RAINEY forwarded his résumé to California Attorney General's Office Official A by e-mail with the following message:

> I have attached a resume for the [S]pecial [M]aster position,
> hopefully, it is in a format that you will be able to read, if not
> let me know and I will fax it to you. I will be in GA this week,
> cell # [XXX XXX-XXXX], and we can talk about the
> conflicts that you have a concern about. I will try to call you
> between flights.
>
> Ryan

19. On or about March 29, 2004, a conference call was conducted between the defendant, RYAN H. RAINEY, California Attorney General's Office Official A, and YACA and Youth Authority officials, representatives, and agents. The purpose for this conference call was for the California state officials and agents to interview defendant RAINEY for the

Special Master position. Following his interview, the California state officials decided to submit defendant RAINEY to the plaintiff as the state's candidate for the Special Master position.

20. On or about April 1, 2004, California Attorney General's Office Official A contacted Plaintiff's Counsel A and informed him of the state's decision to submit defendant RYAN H. RAINEY for consideration by the plaintiff for the Special Master position.

21. Following her telephone conversation with Plaintiff's Counsel A, California Attorney General's Office Official A sent the following e-mail message to defendant RYAN H. RAINEY:

> I had a conference call today with Plaintiff's [C]ounsel [A] regarding the [S]pecial [M]aster. [He], of course, expressed reluctance in using you. However, I gave him the contact information, and he has agreed to make some calls and investigate further rather than reject you outright. You can expect to hear from him soon. (I told him to contact [your references]. He will probably not contact them all, but who knows. He at least better call you!)
>
> [A colleague in my office] said that I gave a very good pitch, and [Plaintiff's Counsel A] admitted that your CV looks good and your qualifications are excellent. He did recall having several conversations with you, and said he was not very happy after the calls (of course not, since he was pissed you were "interfering with his lawsuit.") Anyway it is up to you to wow him at this point.
>
> If I hear anything else, I will let you know. Good luck!

22. On or about April 6, 2004, defendant RYAN H. RAINEY responded to California Attorney General's Office Official A's e-mail as follows: "Thanks for the update. I have not heard from him yet!"

23. In or about late-April or early-May 2004, California Attorney General's Office Official A was notified by Plaintiff's Counsel A that he would not endorse defendant RYAN H. RAINEY's appointment as the Special Master. California Attorney General's Office Official A informed defendant RAINEY of this development, but told him that she wanted to pursue his nomination over the objection of Plaintiff's Counsel A and was going to submit his name to the court as the Youth Authority's nominee. Ultimately, this was never done.

24. On or about June 2, 2004, one of defendant RYAN H. RAINEY's Civil Rights Section supervisors ("DOJ Supervisor A") received a voice-mail message from Plaintiff's Counsel A inquiring about another potential Special Master candidate ("Candidate B").

25. Because defendant RYAN H. RAINEY had worked previously with Candidate B, and presumably would have to work with him if Candidate B was appointed to the Special Master position in California, DOJ Supervisor A called defendant RAINEY to discuss Candidate B's qualifications.

26. On or about June 3, 2004, defendant RYAN H. RAINEY told DOJ Supervisor A that he had applied for, and was being considered for, the same Special Master position as Candidate B.

27. On or about June 7, 2004, defendant RYAN H. RAINEY met with two other Civil Rights Division supervisors ("DOJ Supervisor B" and "DOJ Supervisor C") to discuss his previously undisclosed candidacy for the Special Master position. After receiving the advice from a DOJ Ethics Official, DOJ Supervisor C informed defendant RAINEY that, effectively immediately, defendant RAINEY was recused from further handling the Department of Justice's Chad Facility investigation.

28. The parties to the taxpayer lawsuit ultimately agreed upon a different candidate for the Special Master position. California Attorney General's Office Official A notified defendant RYAN H. RAINEY of his non-selection in an e-mail dated on or about November 5, 2004.

Dated: May 2⁶, 2006

FOR THE DEFENDANT:

_____
RYAN H. RAINEY
DEFENDANT

_____
JUDITH L. WHEAT, Esq.
Wheat & Wu PLLC
1050 17th Street, NW – Suite 600
Washington, DC 20036
T: 202-496-4963 / F: 202-466-3226

FOR THE UNITED STATES:

ANDREW LOURIE
Acting Chief
Public Integrity Section

By: _____
ARMANDO O. BONILLA
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW – 12th Floor
Washington, DC 20005
T: 202-616-2983 / F: 202-514-3003

-8-